UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GLOBAL HAWK INSURANCE CO., | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No.  SA-15-CV-1055-XR |
| CARLOS VEGA, d/b/a VEGA TRUCKING, IBARRA'S TRUCKING, UFP TRANSPORTATION, INC., UFP SAN ANTONIO, INC., TRAVELERS INDEMNITY CO. OF CONNECTICUT, ESTATE OF EDGAR A. SEURER, and HOME COUNTY MUTUAL INSURANCE CO., | § § § § § § § § § § § § | |
| *Defendants*, | § | |

**ORDER**

On this date, the Court considered Defendants' 56(d) Motion to Stay Response Deadline to Plaintiff Global Hawk Insurance Company's Motion for Summary Judgment (Docket no. 109), and Global Hawk's response (Docket no. 111). After careful consideration, the Court will DENY Defendants' Motion. Defendants will have 14 days from the date of this order to respond to Global Hawk's Motion for Summary Judgment (Docket no. 104).

**BACKGROUND[1]**

On or about July 15, 2015, Edgar A. Seurer was fatally injured in an accident when the automobile he was operating collided with a tractor owned and operated by Carlos Vega. Docket no. 1 at 6. At the time of the accident Vega was making a delivery for UFP Transportation and/or UFP San Antonio as a sub-hauler under a master agreement that UFP had with Ibarra's Trucking.

---

[1] These facts are adapted from this Court's May 4, 2016 Order. Docket no. 94. Relevant changes and updates are made where necessary.

1

*Id*. The trailer Vega hauled was owned by UFP Transportation and the bill of lading indicated that wood building products were being shipped by UFP San Antonio, LLC. *Id*.

The Estate of Edgar Seurer filed suit in the 57th District Court of Bexar County, Texas alleging various theories of negligence. Docket no. 83-1 at 2.

In this suit, Plaintiff Global Hawk Insurance Company asserts that it issued a commercial auto policy to Carlos Vega d/b/a Vega Trucking. Docket no. 95 at 4. Global Hawk asserts that its policy only covered Vega when hauling sand and gravel, and there was no coverage when Vega was hauling wood products. *Id*. at 5. Alternatively, it asserts that its policy specifically provides that it is "excess over any other insurance available" when Vega was serving as a subhauler. *Id*. at 9. Accordingly, Global Hawk asserts that Traveler's Indemnity Company of Connecticut[2] and Home County Mutual Insurance Company[3] are the primary insurers that have both a duty to defend and a duty to indemnify Vega in the state lawsuit. *Id*. at 4.

Global Hawk initially sought a declaratory judgment that it has no coverage obligations because Vega breached the policy by hauling wood products. Docket no. 61-1 at 6. It also sought a declaratory judgment that since Traveler's and Home County are the primary insurers, they are required to reimburse Global Hawk for any amounts it has expended in the state lawsuit. *Id*. at 7–8. In addition, Global Hawk sought a declaratory judgment that its policy specifically excluded coverage for any claims for punitive or exemplary damages. *Id*. at 8. Finally, Global Hawk sought a declaratory judgment that since Vega made material misrepresentations in his application for insurance (i.e. stating that he only hauled sand and gravel), it is entitled to rescission of the policy. *Id*. at 9.

---

[2] Traveler's allegedly issued a commercial auto policy to UFP Transportation, Inc.
[3] Home County allegedly issued a commercial auto policy to Ibarra's Trucking.

In addition to naming Carlos Vega as a defendant, Global Hawk named Ibarra's Trucking, UFP San Antonio, Traveler's Indemnity Company of Connecticut, Home County Mutual Insurance Company, and the Estate of Edgar Seurer as defendants. *Id*. at 2. Global Hawk is incorporated in Vermont and has its principal place of business in California. *Id*. at 3. Complete diversity exists between the Plaintiff and all defendants. It is uncontested that the amount in controversy exceeds $75,000.

On March 2, 2016, Global Hawk filed a motion to amend its complaint, which this Court granted on May 4. Docket nos. 78, 94. In its second amended complaint, Global Hawk makes clear that it is only seeking a declaratory judgment that it has no duty to defend or indemnify Vega for any of the claims asserted by the Estate of Seurer because its policy only provided coverage for sand and gravel hauling. Docket no. 95 at 5. Alternatively, Global Hawk seeks a declaration that it is entitled to rescission of the policy because Vega made material misrepresentations (i.e. stating that he only hauled sand and gravel). *Id*. at 7.

In addition to granting Global Hawk's motion to amend its complaint, the Court's May 4 Order also assessed the propriety of summary judgment at this stage in the case. Docket no. 94. Because the insurance policy contains a Limitation of Use Endorsement which clearly states that Vega will not be covered when hauling anything other than sand and gravel, and it is undisputed that the accident occurred while Vega was hauling wood products, the Court ordered Global Hawk to submit a motion for summary judgment. *Id*. at 3–4. Global Hawk did so on May 25, 2016. Docket no. 104.

On June 2, 2016, a group of defendants[4] filed the motion now before the Court—an Emergency 56(d) Motion to Stay Response Deadline to Global Hawk Insurance Company's

---

[4] These Defendants are Carlos Vega d/b/a Vega Trucking, E. Ibarra's Trucking, Inc., Home State County Mutual Insurance Company, and the Estate of Edgar A. Seurer.

Motion for Summary Judgment. Docket no. 109. The thrust of their argument is that there are fact issues relating to whether Vega sought to update his coverage in a way that would bind Global Hawk. *Id.* at 12–13. Because of these fact issues, Defendants argue, their response to Global Hawk's motion for summary judgment should be stayed until after they have a chance to conduct discovery. *Id.* at 13. Defendants shortly thereafter filed a motion for expedited relief and a hearing to stay the summary judgment response, which was denied. Docket no 110. We took the 56(d) motion to stay under advisement on June 6, and Global Hawk filed its response to that motion on June 8. Docket no. 111.

## DISCUSSION

### I. Legal Standard

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). Motions under Rule 56(d) are "'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'" *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006)). In other words, the nonmoving party must have had an opportunity to discover information necessary to its opposition to the summary judgment motion before summary judgment may be granted. *See Anderson*, 477 U.S. at 250 n.5 ("This requirement in turn is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.").

To obtain relief under Rule 56(d), the nonmovant must demonstrate two things: "1) why he needs additional discovery, and 2) how the additional discovery will likely create a genuine issue of material fact." *Chenevert v. Springer*, 431 F. App'x 284, 287 (5th Cir. 2011) (citing *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999)).  A nonmovant is not entitled to any sort of continuance, however, if it "fail[s] to explain what discovery [it] did have, why it was inadequate, and what [it] expected to learn from further discovery" and only provides "vague assertions of the need for additional discovery." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999) (citing *Reese v. Anderson*, 926 F.2d 494, 499 n. 5 (5th Cir. 1991)) (internal quotation marks omitted).

## II.    Application

In their motion, Defendants argue that there is "a fact issue as to whether the Limitation of Use Endorsement [which excludes non-sand and gravel hauling from coverage] was mistakenly endorsed onto the Global Hawk policy at the time of the incident giving rise to the Underlying Lawsuit." They argue that Vega, recognizing that he would need to update his Global Hawk policy to cover his contract to haul for Ibarra's, approached the GIA Insurance Agency and sought to have his policy updated as needed, but that GIA failed to update the policy and remove the Limitation as requested. *Id*. at 12. With this background in mind, Defendants seek additional discovery on the relationship between GIA and Global Hawk, raising the possibility of a binding agency relationship between these two that would subject Global Hawk to a reformation of the policy based on GIA's alleged failure. *Id*. at 12–13.

Defendants' motion is denied because their theory is no more than a "vague assertion[] of the need for additional discovery." Taking as true the factual assertion that Vega did indeed

5

approach GIA to amend his policy[5] and the legal assertion that this request obligated GIA to remove the Limitation,[6] Defendants allege no facts to connect these conclusions to Global Hawk. Their argument is premised on the claim that "*it is unknown to the Defendants* whether the GIA Agency told Global Hawk about Vega's change in insurance coverage prior to the incident giving rise to the Underlying Lawsuit, and/or what authority the GIA Agency had with regard to the representations it made to Vega." *Id*. at 12 (emphasis added). This is not a factual assertion. It is mere speculation that an unspecified[7] yet binding agency relationship existed between GIA and Global Hawk. Defendants' characterization of this relationship as "unknown" to them is not a justification for time to conduct discovery, but is instead an implicit admission that this theory is speculative and void of any factual allegations to support it. Accordingly, their request for a stay on Global Hawk's motion for summary judgment is denied.

## CONCLUSION

Defendants' 56(d) Motion to Stay (Docket no. 109) is DENIED. Should they wish to file a response to the merits of Plaintiff Global Hawk's Motion for Summary Judgment (Docket no. 104), this response is due on **November 1, 2016**. Defendants are directed that in such a response, they should address the sole question of whether there is a genuine issue of material fact relating to the policy's coverage in light of the Limitation of Use Endorsement.

---

[5] Global Hawk does not explicitly deny this allegation, and it is supported by declarations from Vega and Guillermina Ibarra, Vice President of Ibarra's Trucking. *See* Docket nos. 109-1, 109-2.

[6] Global Hawk argues that Vega does not allege that he specifically requested for GIA to remove the Limitation, but asked generally that his policy be updated to cover his hauling for Ibarra's. Docket no. 111 at 2–3. From this perspective, Global Hawk argues that GIA had no duty to determine that Vega needed to have the Limitation removed from his policy in order for him to be covered. *Id*. Defendants, on the other hand, seem to argue that GIA did have such a duty because "[a] very cursory investigation of Ibarra's Trucking's business would reveal that it is not involved in the hauling of sand and gravel. If the Gia Agency or Global Hawk had called [Ibarra's, they] would have confirmed [their] business does not haul sand or gravel." Docket no. 109-1 at 2. The Court need not make a decision on whether GIA had an affirmative duty to amend the policy to remove the Limitation, but assumes for purposes of this motion that it did.

[7] *See* Docket no. 109 at 12–13 ("[A] finding . . . the GIA Agency was a recording agent *or* a soliciting agent acting with actual *or* apparent authority for Global Hawk[] would result in the Global Hawk policy being subject to reformation." (emphasis added)).

It is so ORDERED.

SIGNED this 18th day of October, 2016.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE